392 So.2d 1126 (1981)
MISSISSIPPI HILL & DELTA SAVINGS & LOAN ASSOCIATION
v.
The VALLEY BANK.
No. 52271.
Supreme Court of Mississippi.
January 14, 1981.
Gail B. Richards, Blount, Tennyson, Richards & Reynolds, Charleston, for appellant.
William S. Adams, Jr., Levingston, Jacks, Levingston & Land, Rosedale, for appellee.
Before PATTERSON, ROBERTSON and BOWLING, JJ.
BOWLING, Justice, for the Court:
This case, insofar as we can determine, is one of first impression in any jurisdiction. It arose in the Chancery Court of the Second Judicial District of Bolivar County. Appellant, Mississippi Hill & Delta Savings & Loan Association of Charleston, Mississippi, appeals from a money decree rendered against it and in favor of appellee, The Valley Bank of Cleveland, Mississippi. The unusual facts giving rise to the controversy are as follows.
On December 21, 1976, George and Peggy Powell applied for and received an installment loan from appellant, Mississippi Hill & Delta Savings & Loan Association, in the principal sum of $21,000, and to secure the loan, the Powells executed a deed of trust on real property located in Bolivar County. The provision of this deed of trust which resulted in the present cause involves fees due the trustee and attorney in the event of foreclosure, and reads as follows:
In the event of foreclosure hereunder, the proceeds from the sale of said property *1127 shall be applied: First, to the payment of all expenses of the execution of this trust, including a five percent (5%) Trustee's fee and fifteen percent (15%) attorneys' fees (both of which fees shall accrue immediately upon instructions being given to the Trustee to foreclose); second, to the liquidation of all indebtedness secured hereby; and, third, to the Grantor or other persons thereto entitled as to any balance ...
On March 21, 1977, the Powells received a loan from appellee, The Valley Bank, and secured the loan by executing a second deed of trust on the same property involved in the Savings & Loan Association loan. This second indebtedness was in the amount of $13,410.39. The Powells defaulted in their indebtedness to appellant Savings & Loan Association. The trustee in this deed of trust was one James Bryant, an officer of the Association. Upon default in payment of the loan, the trustee turned the file over to Attorney Andrew Baker for foreclosure proceedings.
The most material evidence in the record appears in the testimony of Attorney Baker. He testified that when he and Mr. Bryant (the trustee and association official) went to Cleveland for the purpose of conducting the nonjudicial foreclosure sale, he was met by Attorney Gerald Jacks, who represented appellee, The Valley Bank, and a representative of the bank. Mr. Baker was advised that the bank was a junior lienholder and was asked by Mr. Jacks what would be necessary for him to bid on behalf of his client, The Valley Bank. Of course, what was necessary would include the expenses of the foreclosure, attorney's fee, trustee's fee, and payment of the balance of the indebtedness. Attorney Baker inspected a copy of the original deed of trust given the Savings & Loan Association. He had already compiled a tentative figure as to the requirements of the Savings & Loan Association from a personal inspection of the first deed of trust, and so advised Jacks and the Bank's representative. Thereafter, at the sale, the Savings & Loan Association bid $27,000 on the property, and Attorney Jacks, representing The Valley Bank, bid $27,001, and thereby purchased the property on behalf of the bank.
The foreclosure sale was held on February 3, 1978. On February 25, 1978, appellee bank secured an instrument from Mr. and Mrs. Powell styled "Assignment of Interest," under the terms of which the Powells' assigned to the bank any and all title and interest, if any, to any of the proceeds resulting from the foreclosure sale, and expressly granted to the bank the right to take any and all action necessary either in the name of the Powells or in the name of the bank to enforce collection of any of the proceeds of the foreclosure sale which might be due and owing to the Powells.
On August 31, 1978, The Valley Bank filed a suit against Mississippi Hill & Delta Savings & Loan Association and James R. Bryant, Trustee, requesting an accounting in equity of all of the expenses in connection with the foreclosure sale and requested a finding that the fees and expenses charged by the defendants were grossly excessive and unjustified, and that the complainant bank was entitled to receive a decree against the defendants in an amount to be determined by the court representing alleged excessive attorney and trustee charges. The lower court found that it had the authority to inquire into the reasonableness of the fees stipulated in the deed of trust between the Powells and the Savings & Loan Association, and had the power to decide if those fees were unreasonable and excessive, and to grant the Powells' assignee, The Valley Bank, a judgment for an amount found by the lower court to be in excess of reasonable fees. A decree was entered giving The Valley Bank a money decree against the Savings & Loan Association and its trustee.
Even though the briefs of the parties and the opinion of the lower court cite authorities, we have exhaustively researched the question of law presented in this appeal and can find no authority either for or against the cause of action involved in this particular case. There is an abundance of authorities giving the courts the right to find that *1128 attorneys' fees and trustee fees in notes and deeds of trust are unreasonable. We find, however, that in all of these, suits had already been filed involving the collection of a note providing for either reasonable attorney fees or a set percentage attorney fee, or the question involved a judicial foreclosure already pending before the court or some other pending litigation. In addition, there are many cases involving the question under notes and chattel deeds of trust involving only personal property. We find no authority where the deed of trust involves only real property in a nonjudicial foreclosure and then a separate suit later brought by either a mortgagor or his assignee as was done here.
The lower court relies on three Mississippi cases: Travelers Indemnity Co. v. Clark, 254 So.2d 741 (1971); Tedcastle v. Garfinkel, 148 Miss. 507, 114 So. 326 (1927); and Turberville v. Simpson, 94 Miss. 154, 47 So. 784 (1908). Turberville, supra, involved personal property and had other judicial questions involved along with the collection of attorneys' fees on notes upon foreclosure of a chattel deed of trust. Tedcastle, supra, involved a suit on a promissory note and a court interpretation in connection with the suit.
In Travelers, supra, a complicated receivership matter was involved in a chancery court action. Incidental to that action there was involved the question as to whether or not the collection of certain notes incidental to the action would justify an attorney's fee of ten percent. This Court, in reinstating the ten percent attorney's fee in regard to the notes incidental to the action pending in court, said:
The receiver contends that the court acted within its discretion in setting such attorneys' fees at a figure less than the ten percent stipulated in the notes, but fails to cite any authority justifying reducing the attorneys' fees below that contracted for in the notes. Absent a showing that the Bank would make a profit on the provisions in the note regarding the attorneys' fees, and absent a showing that the attorneys' fees were unreasonably high, we hold the contract was enforceable and that the Bank is entitled to the ten percent attorneys' fees stipulated in the notes.
A number of authorities followed the above quote from the Court's opinion in Travelers but an examination of those cases reveals that all of them involved either personal property, a judicial foreclosure, or a reasonable attorney's fee question incidental to a decision of the entire case. The lower court and appellee here attached importance to the language in the above quote, saying "and absent a showing that the attorneys' fees were unreasonably high." As hereinbefore pointed out, there is ample authority under which this dicta statement may be used, but never has it been used or any similar statement in a suit after a nonjudicial foreclosure as we have in the present case.
There are a number of considerations this Court has to keep in mind. It may be safely said that the courts and the business world favor nonjudicial foreclosure sales. To establish a principle that would deter that procedure and encourage all foreclosures to be handled through judicial procedure would not be proper. An additional consideration with which this Court is concerned is that under a nonjudicial foreclosure sale involving only real property, if the mortgagor or his assignee, has a statutory limitation period to file a separate suit in either equity for an accounting or at law for unjust enrichment, or a wrongful and unreasonable fee charged, there possibly could be a cloud on the real property during the statutory limitation period for filing suits. However, we do not reach that question here. We point it out as possibly one reason there are no authorities in a similar case to that we have here.
As hereinbefore stated, we are dealing only with a deed of trust on real property. The method of disposition of proceeds under a deed of trust on personal property is provided for in the Uniform Commercial Code [Mississippi Code Annotated section 75-9-504 (1972)].
*1129 As indicated by this Court in Travelers, supra, the parties to a contract have a right to make contractual provisions among themselves and the courts will not limit freedom to contract except under certain situations such as the provision being against public policy, made under fraud or duress, and other considerations such as those hereinbefore discussed where the court in a legal proceeding has before it the unreasonableness of the contract provision. Of course, there are many other legal reasons why the court would be justified in setting aside contractual provisions between parties. We do not reach that question here except to say that only in clear situations should the court interfere with the right of parties to contract as they wish.
In deciding the case now before the Court, we first note that appellee, The Valley Bank, made a second loan to the Powells and took a second deed of trust on the property already secured by the deed of trust to the Savings & Loan Association. Appellee accepted the second deed of trust and made the loan with full constructive notice of the provisions of the first deed of trust, including the provisions regarding trustee fees and attorney fees, the first deed of trust having been on record for a considerable period of time. On the day of the foreclosure sale, the representative of appellee bank verified with the representative of the Savings & Loan Association, and made his own verification, that the Savings & Loan Association bid would include the attorney fee and trustee fee stipulated in the first deed of trust. Appellee bank's bid on the property was deliberately calculated to be an amount that would include payment of the fees according to the first contract. Under the peculiar facts of this case, and considering the hereinbefore set out statements regarding doubtful results if decided otherwise, and the lack of authority to do otherwise, we hold that appellee bank was estopped to later file its separate suit after the nonjudicial foreclosure and sale of the real property. This conclusion is amply justified under the general authorities on estoppel.
As stated in 31 C.J.S. Estoppel section 1, "Estoppel is a bar which precludes a person from denying the truth of a fact which has become settled in the contemplation of law."
Estoppel is a term of wide implication, and implies that one who by his deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct and thereby cause loss or injury to other ...
Estoppel is also defined in terms of a preclusion, as the preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part or the part of those under whom he claims, or by an adjudication on his rights which he cannot be allowed to call in question ...
We do not reach the question as to whether or not the trustee's fee and the attorney's fee in this particular case were reasonable for the reasons hereinbefore set out. We merely hold that in this particular case, appellee, with its knowledge and actions as hereinbefore stated, is barred by the law of estoppel from bringing the unusual suit that was brought. Therefore, we reverse and render judgment here for appellant.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.